Good morning, Your Honors. Reverend Peterson appearing on behalf of the Abbe plaintiffs. First, I'd like to thank you for your courtesy in continuing this matter when I was ill. I appreciate that. This is an important case. It's a case that deals with the issues of, well, many of the issues in this case are quite complex. But the primary issue deals with the misnomer, I believe, a principal activity and a pre-imposed work activity, particularly within the scope of what's called the donning and doffing conundrum. In this case, the trial court had originally ruled that equipment was still on the dock. Equipment was in the case. It originally ruled that we were going to have a set of core issues. It originally ruled that various officers were not within the core issues situation, motor officers and others. And then it later presented a jury verdict to the jury, which was supposed to be a form that addressed core issues, but died on the first question. Wasn't the form agreed to by the parties? The form was delivered mid-no, it was not. It was delivered mid-argument, and it was contentiously opposed all the way up to that time. It was not agreed to by the parties. As the record shows, it was delivered to me in the midst of my argument. So I did not have a chance to review and approve it before I saw it, and the form was delivered. The way it was delivered is so passive. Who delivered it? The court. The court delivered it from Chambers, and I got it at that point. And the counsel had not agreed on a verdict? I had not agreed on that verdict. That's not what I asked you. Counsel did not agree on that form. Did you submit another form? There was no time at that point. We had significant arguments about the validity of the form. I mean, the record is replete with the objections and the goings back and forth on that particular concept. The first question, the second question, even the first question, which is discussed in this record, is, as we point out in the reply brief, is absolutely not the question that we had proposed or had thought was appropriate. So if I'm recalling this right, you had asked to add additional words to the form. Can you explain what the difference was between your version of the first question and the one that was ultimately in the verdict form? Yes, the definition of work was the key. To suffer or permit is a part of the definition of work. If an employer suffers or permits an employee to sit around because that's what they want him to do, waiting to be assigned to run an errand, he is still an employee being paid. So suffer or permit has to do with whether the employer knows about the employee's work or not, correct? They allow the employee to work. No, suffer or permit doesn't require knowledge. It only requires that you direct an employee or allow an employee to work. What was the question that you had requested for the first question? Could you just remind me what that was? The first question, as I recall, had very specific language and it was a complete definition of what the work was, what the definition of work was. Can you read it to me? Do you have it here? I believe I do. No, I cannot turn it on real quickly. I can get to it, but it would take a while. It's 71 pages. The first question, let me see here. Whether the activities each trial plaintiff claims to have performed, bracket, were suffered or permitted, end bracket, footnote three, outside of his or her regular working hours were necessary to the principal work performed, bracket, and done primarily, end bracket, footnote four, for the benefit of the city, i.e., were these activities compensable work under the FLSA, question mark. Now, where is this on the actual verdict form? Which question on that? This is question number one that we wanted, and that's the way we thought it should be phrased. The way it was finally phrased was, were the employees, paraphrasing, they basically asked, did they work compensable hours? Let's not paraphrase. Let's see, what was the actual question? It's on page 201 of the excerpts. OK. Do you have the excerpts? No, Your Honor, I don't. You didn't bring the excerpts to court with you? I don't have all of them. There are more than I can carry. No, I don't have them all. I do know the question very well. The question was whether or not they were. No, it doesn't say whether or not. No, the question probably doesn't say whether or not. It says, but the core of the question is, did they work compensable hours? I don't want the core of the question. I want to talk about the actual question. OK. I do not have the actual question in front of me. I'm sorry. You came to court without the excerpts, Your Honor? What do you think we're going to talk about today? The excerpts are, I have some, but I do not have them. You don't have the verdict form. This is the very thing you're challenging. Knife. I left that on my desk. I apologize. But the first question is still the first question in the case. And this first question in the case is a liability, excuse me, is a damages question and not a question on liability. It's, did you work compensable? Or was your, did you get compensated for your work? That's damages. Did Bancroft establish that he actually performed uncompensated work? That's the question that was asked. What's wrong with that question? Well, that question is uncompensated work, in this case, deals with exemptions, deals with offsets, deals with credits for pay on a 156-hour annualized basis, which can't be under 7k, deals with interpretations of whether 7k can be applied, does not have a base rate calculation for which to make a deduction. Could I just interrupt you for a moment? Because I'm a little confused. I thought I don't have, so maybe I'm in trouble, too. I don't know that I have the definition of work here. But I thought the definition of work that the court gave was just the standard definition. It wasn't objected to. And so the question whether the plaintiffs performed uncompensated work seems to me different as to whether the city might have some defense if they did, which is what I understand the 207-0 and 207-k to be. So why does that make any difference? Isn't this question whether the plaintiffs performed any uncompensated work at all merely the threshold? No. It's the ultimate question. Were they compensated? Was the entire defense, in other words, the city took the position that they were compensated? Right, that's the defense. But don't we first have to establish that there was uncompensated work, and then determine whether the city has a defense to that? First, you have to determine whether or not there was work. The question of donning and doffing as work, and the question of the safety gear as work, is the critical question. Well, and isn't that what you lost on? I mean, all the juries in the eight verdict forum said no. So doesn't that just end the inquiry? The juries did not say no. If the court looks at the rest of the questions, if they had answered them, we'd have had a factual decision. Aren't those all just, when I read through them, it appeared that they were relating to employer knowledge, or the amount of the uncompensated work, or the availability of the offsets to limit liability, as opposed to the threshold question as to whether there was work at all. So I wasn't sure why those other questions were relevant once the jury had determined that there was no uncompensated work. The easiest way to answer that, Your Honor, is to take a look at what is uncompensated. Uncompensated, in this case, would say, if you have a 7k that's valid, okay, then you have compensation for everything under 43 hours in a work period. And that would be a disputed issue of fact, not something that could be decided, and was decided on summary judgment. So we have a summary judgment that predates on several of these issues, all of which are questions of fact, one of which is, did you get compensated? Before you can get to that question, you have to get to the question of, did you work? And if you want to get to that question, you have to define, what is work? And what is work is, did somebody suffer or permit a person to engage in an activity for the benefit of the employer? It sounds to me like these are all questions to be dealt with in the jury instructions. Are you objecting to jury instructions? We have objected to jury instructions, particularly 204, was objected to as being improper. We've looked at those, the record's very replete with concerns about the jury instructions. I don't remember in your brief, where is it? That would be in the reply brief. You can't raise it in the reply brief. We argue. You can't raise arguments in the reply brief. Where in the blue brief are they? There was no briefing on those that we objected to. Those were objected to in oral court, orally in front of the judge. The judge did not... Well, you don't get to argue things on appeal unless you put them in your brief. We just... If they're not briefed, then they don't exist on appeal. Are you talking about the trial court brief or the appellate court brief? I'm talking about right here. Right here, we raise that in our reply brief. I can't raise issues, new issues in your reply brief. If you want to raise an issue, it has to be in your opening brief. We raise in the opening brief that the objections were made, but this was a specific argument on 204. Where in your opening brief are you, do you object to the jury instructions? Okay. We discuss our concern about the jury instructions in at page eight, as I read the index. We're on page eight. And that's what I'm looking for now. We're on page eight. I'm looking. Okay. That's the verdict. We object to the verdict on that point at page eight. Okay. If we've got five minutes left, do you want to save them? Yes, I would rather save my time than spend it trying to find the particular line of page. Okay. Thank you.  Colleen Smith on behalf of the appellate appellee, the city of San Diego. And initially I'll go ahead and respond to the questions that have asked for appellant. With regard to the verdict form in particular, the first question on the verdict form was agreed to by the parties. It was stipulated. The record citation for that is in the trial transcript at pages three, nine, nine, nine to four, zero, zero, two. Unfortunately, your honor, it is not in the excerpts of record, but it is in the trial transcript. Is the trial transcript consecutively numbered throughout the trial? Yes, your honor, it is. So we don't need a date. I can also give you the date. It's February 10th, 2009. And what are those pages again? Three, nine, nine, nine to four, zero, zero, two. There's the discussion there regarding the stipulated verdict form. Council specifically agreed to question one on the proposed verdict form, as well as question two. There was a small disagreement on question three, but of course, that's irrelevant to this appeal. With regard to the differences of opinion among counsel, that was in the proposed pretrial order with regard to the first statement of core issues. That's the paper I handed to counsel in the portion that was read. Thank you. There was a disagreement, and as Mr. Peterson has indicated, that disagreement was with regard to whether the suffered or permitted component needed to be in the definition of work, or whether it was a separate piece of the claim that needed to be proven. Of course, this issue was resolved in the jury instructions, wherein the district court issued an instruction on the definition of work. That was instruction 12.1. Instruction 12.3 contains the relevant legal standard for whether the work was suffered or permitted. Those portions of the jury instruction, of course, are read into the special verdict form, well established that the jury instructions guide the jury. The jury then applies the jury instructions to complete the verdict form. Also, with regard to objections to the jury instructions, counsel for the city was not able to find that in the opening brief, and as the court is well aware from the city's answering brief, several of the issues the city believes were waived, either because they were not waived in the district court, or now new issues that have been raised in reply were not presented in the opening brief. Turning to the principal issues, both of the principal issues that the plaintiff has raised in this appeal, and excuse me, I use plaintiff, but appellant. The two main issues that have been raised are whether the district court properly granted summary judgment in the city's favor on the Donning and Dauphin claims, as detailed in the city's brief. It's the city's position that that particular issue is controlled by the court's decision in Bomonte. Also, wanted to direct the court to Dager versus City of Phoenix, which is a companion case to Bomonte, involved some of the same claims as Bomonte. The big difference between Bomonte and the Dager case, which was also decided by this court in a memorandum disposition, is that in the Dager case, there were some officers who were required to wear bulletproof vests. The court applied its Bomonte analysis to the outcome in, to the Dager case. And- But that was an unpublished disposition, right? It was, your honor. It was, although it is recent, it postdates the court's rules regarding unpublished- It doesn't really help you on here, right? Pardon me? It doesn't really help him. The district court's opinion does, fair enough, the district court's opinion does reflect that the officers at issue, some of them were required to wear bulletproof vests. I could also direct the court to the case that's cited in the memo- How do you deal with the bulletproof vests since it's not covered by the law? The officers were able to dress into the bulletproof vest at home. It's part of the uniform equipment. The record indicates that some of the officers fully dressed at home, including their bulletproof vest, which was admittedly required by the city of San Diego to be worn. It's not a significant distinction. The officers still have the option and ability to dress into that bulletproof vest at home. There was nothing in the record to indicate that that was not actually an option on summary judgment and that the district court correctly granted that motion. Several other district courts have addressed this issue post-Bemonte, a couple of them also in the Southern District of California and one in the District of Arkansas, I believe, in which those district courts have applied the Bemonte decision to officers who are required to wear bulletproof vests. So the standard of Bemontes is whether the employer requires it either actually or practically to be done, dressed at work. And so does it matter whether it's a bulletproof vest or some other sort of item of clothing if the standard is met? That's absolutely correct. So that if, for instance, the bulletproof vest was like the bunny suits in Belarus, it was an item of clothing that those particular individuals had to don at the workplace because the bunny suits were protective clothing to protect the factory, the silicon wafer manufacturing facility. Those had to be put on location. Bulletproof vests are just like the gun belt, just like the uniform shirt here, just like the pants. It's not the item of clothing that matters. It's the analysis with regard to whether it had to be covered. Now these SWAT motorcycle officers, now my understanding is that their claims were not resolved in the first summary judgment, but in the third summary judgment under the issue preclusion. Is that correct or is there anything where, how were those claims resolved? Of course. There was a footnote in the district court summary judgment order excluding the motorcycle officers. I think also excluding the SWAT officers. The reason for that reflected in the district court record was because the motorcycle officers, obviously they dress at home, they drive their motorcycles into work. The SWAT officers, the specialized SWAT equipment, those officers don't actually put that gear on until they arrive at the scene and need it. But setting that aside, the actual reason why this court should affirm the district court's judgment as to those particular folks is because although that footnote exists in the district court order, the plaintiff never raised that issue at any point after that. There was no proposed jury instruction applicable to those folks. It was not identified in the proposed pretrial order identifying the issues for trial. It was not a subject of any Rule 50 or similar motion. At no point during the trial did the plaintiffs attempt to present evidence regarding those officers donning and doffing activities. Throughout the trial, the district court was clear that the donning and doffing, discussed that it had already ruled on the donning and doffing issue. At no point did the plaintiffs object to that and say, no, you haven't ruled on this with regard to the motorcycle officers or with regard to the SWAT officers. It was abandoned by the plaintiffs after the summary judgment order. Ms. Smith, were any of the eight representative plaintiffs, either motorcycle or SWAT officers? Yes, they were. One, two of the officers had fulfilled SWAT assignments at some point during the period of time when they, during the statutory limitations period. SWAT is, for many officers, a collateral duty assignment and not a principal duty. One of the officers in question had SWAT as his principal duty. One of the officers in question was assigned SWAT as a collateral duty. And in both cases, there was not testimony elicited regarding the compensability of putting on the SWAT gear. Motors, I do not believe that any of the officers were assigned to the motorcycle unit, but I don't know that as I stand here today. Okay, thank you. Thank you. Thank you. Did you leave your notebook there? Is that your notebook? Yes. Actually, do I have any time remaining? Do I have any time? There's no more, but you had a little more time. The concept of this being a trial is a misnomer. This was a trial on eight people on representative issues. The only thing that was going to be determined on damages was for eight people. The representative core issues, as a matter of due process, were not agreed to. In fact, the pre-trial conference order submitted indicates that there were conflicts and insufficient time, and there is not in this record one agreed core issue. Nowhere. There has never been a core issue agreed to. The appellees have no argument in this record that there is one single core issue, and they do not put one single core issue with an agreement in here. The purpose of this trial- Your clients didn't agree to be bound by this judgment? My clients did not agree to be bound by this judgment. There was never an agreement on core issues to be agreed to be bound by. That's quite different from the question whether they agreed to be bound by the judgment. Not when I was the person speaking for them. When I spoke for them, I spoke very specifically, and I spoke, these gentlemen will agree to core issues. We had a host. We had far more than we could ever try, and there was never an agreement on what they would be. There is no core issue in the record. That is the number one problem with the way this trial went. Pre-trial order never got signed. The pre-trial order was where we were going to do this, if you read the record, where we were going to agree on core issues. The concept, that argument has been in the record, you don't have to have a pre-trial order. I agree. But when you agree, and the court tells you, we will pick the core issues, you can't go to trial and not have core issues. And there were none. That's the problem with this trial. You've got about 100 officers that are involved in traffic and traffic related. They're not in this case at all. You've got the SWAT officers that aren't in this case at all. There was no waiver because they weren't at issue. This was a trial specially set on a suggestion, and I'm the person that made it, that we find a way to resolve core issues that would then be binding. But we never did get to that point where we found core issues that we could bind ourselves to because nobody ever agreed to them, and there is not one in the record. There is no record on core issues on 207-K, 207-H. What is base pay? There is no core issue resolved or evaluated. In this case, you can't calculate. As a matter of law, you can't calculate whether or not there was a payment made that met the requirements of the FLSA because they don't even have the base rate for which they did the deductions to conclude that they'd already paid the officers enough money so any overtime that they did work was already compensated, and therefore, there is no uncompensated work under question one. That was the argument. There's no uncompensated labor because we have setoffs, we have pay, we already gave you the money, and they take it outside of the pay period. The pay period controls, yet this court let 156 hours on an annualized basis be deducted wholesale from the pay of these officers even if they worked 50 hours in a week, which would be three hours more than the 7-K would allow, 10 hours more than the 7-A would allow. They would not get paid a dime under that theory as this case was presented because the trial court, one, in the summary judgment, and two, at trial, allowed credits for 156 hours without records showing any of this, and there is no record in this case on anybody keeping track of comp time, suit 207-0 time, and there is no record of a 207-K that was adopted. In fact, the city charter says it's a five, five-day work week. To get a 207-K, you have to have a seven to 28-day work week, or work period, excuse me, and they don't have that. The charter only applies and only allows a 28-day work cycle for firemen, which under 207-Y has now been abolished by the Congress. There is no more exemption for firemen, nor did they come in, and this is an exception case, not any other kind of case. The first thing you have to do is prove the exception of 207-K. Otherwise, you're bound by 207-A. The second thing you have to do is prove the officers were entitled under the CFRs to be paid under 207-K. You can't just adopt it, say it's there. You have to factually meet the criteria. There is no evidence of 80-20. In fact, the evidence in the record is to the contrary. There is no record that these officers worked 80-20, and there's admissions that they did administrative jobs, they were off getting sick. There were a lot of things that are not considered law enforcement under 80-20. There are all kinds of exceptions here. 207-O, for comp time, can't be paid to an employee. Comp time under federal law is only for a lieu of overtime pay. In lieu of overtime here, we had one payment. Thank you. Case is argued, will stand submitted. We are adjourned.
judges: Kozinski, Ikuta, Cjj Bolton (Arizona), Dj